---

## In re WRIGHT.

### (*Surrogate's Court, New York County.* July 26, 1889.)

GUARDIAN AND WARD—ACCOUNTING—RES ADJUDICATA.

A proceeding instituted by a father, as guardian, against the trustee of the derivative source of his ward's income, in which a decree was rendered awarding payment of the income to the father on the ground that he had supported his child "mostly from moneys out of his own earnings," does not estop him, in a subsequent accounting as guardian, for claiming a reimbursement for expenses incurred in excess of his child's income, on the ground that he was unable to support her with the aid of her income, as neither the parties nor the issues were the same.

On exceptions to referee's report.

Charles S. Wright, the father and general guardian of Florence Wright, applied for an accounting and revocation of his letters, and objections thereto by Benjamin Foster, as special guardian, were heard, and a decree entered thereon in favor of said Wright, allowing him for certain moneys expended for his ward's support out of his own money, before his appointment as guardian, without judicial sanction. See 4 N. Y. Supp. 343. The trustee of the estate of Marie Adams, grandmother of said Florence Wright, through whom she derived her property, was not represented in that proceeding. Subsequently the decree was opened, and the account contested on a reference granted.

*A. D. Ditman,* for Charles S. Wright, petitioner. *Benjamin Foster, in pro per.,* contra.

RANSOM, S. This is an accounting by the father and guardian of the above-named infant, on his petition for the revocation of his letters. On a previous hearing of objections made to the account by the special guardian, the account was passed and decree entered thereon. In that proceeding the trustee was not represented. Subsequently application was made to open the decree, and permit a contest of the account, which was granted, and the objections were referred. See 4 N. Y. Supp. 343. In May, 1887, the father and guardian commenced a proceeding against the trustee of the estate through which the property of the infant is derived, to compel the payment of income to himself instead of to the mother of the child. In that petition he alleged that he had supported the infant since he became guardian, "partly from the interest and income of a fund left to her by the will of her grandmother, but mostly from moneys contributed out of his own earnings, and that he has supported and caused the said child to be educated mostly out of money belonging to him." In that application the guardian was successful. The referee now holds that he is estopped from asserting that up to the date of that petition he was unable, with the aid of the infant's income, to support his daughter, and from asking the court to reimburse him for expenses incurred up to that date in excess of income; and that also, as to his pecuniary ability up to that date to support his child, the decision of said surrogate on that application is *res adjudicata.* The referee therefore allows the guardian only the excess of disbursements over income from 1887 to the date of the accounting. It will be observed that the referee, by finding that since May, 1887, the guardian is entitled to be reimbursed for sums expended in excess of his own and the infant's income, must necessarily have found that the father was unable to support the child out of his own income during that period. Prior to that date the evidence shows no different state of facts as to the means and income of

the parent and as to the income of the child. · It will also be observed that no objection was made as to the items of the account. There is no contention as to their having been made, or as to their propriety. The referee and the contestants rely upon the strict application of the doctrine of estoppel or *res adjudicata.* It can hardly be that the referee intended to hold that the allegation in question constituted an estoppel *in pais,* for the reason that essential elements to constitute such an estoppel are lacking. In *Dezell* v. *Odell,* 3 Hill, 215, it was held that that, before a party can be thus concluded, it must appear—*First,* that he has made an admission which is clearly inconsistent with the evidence which he proposes to give; *second,* that the other party has acted upon the admission; and, *third,* that the latter will be injured by allowing the truth of the admission to be disproved. See, also, *Andrews* v. *Insurance Co.*, 18 Hun, 163. To constitute an estoppel the person sought to be estopped must do some act or make some admission with an intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, and which act or admission is inconsistent with the claim he now proposes to make. The other party, too, must have acted upon the strength of such an admission or conduct. *Rubber Co.* v. *Rothery,* 107 N. Y. 316, 14 N. E. Rep. 269. In cases of silence there must not only be the right, but the duty, to speak before a failure so to do can estop. Id.

The reason for the enforcement of the doctrine of estoppel is that, by some act or omission, the other party has been misled. The doctrine of *res adjudicata* makes the issue determined conclusive between the same parties, or others claiming under them. The proceeding in which the allegation was made which the referee held to constitute an estoppel in this matter was a proceeding brought by the present guardian in that capacity against the trustee of the estate of Marie Adams. In the present proceeding the parties thereto are the guardian, wherein his liability, if any, is a personal liability, and his ward. In the former proceeding, the infant, if a party at all, was a party through her representative, her father. It is apparent, therefore, that the parties to the two proceedings are not the same. The trustee is no party to the present proceeding. To be sure, the minutes of the stenographer show that witnesses were called in his behalf, but the trustee's attorney appears as counsel for the special guardian. The trustee, as such, is not, and cannot be, a party to this accounting. A good test of the question is the mutuality of the estoppel. This is an essential element of an estoppel. Would the infant be estopped by the decree in question? I believe that a mere statement of the query is sufficient to show that, judged by this test, the doctrine of estoppel does not apply.

Still another point to be considered is the fact that, admitting that the parties to the two proceedings are the same, a judgment is not *res adjudicata* as between parties upon the same side of the issue. For instance, a judgment against several infants cannot determine the rights of the defendants *inter sese.* Thus, if a judgment be given against several co-contractors, and satisfaction is obtained by one of them, he cannot use the judgment as binding evidence against the others of their liability to him to contribute. No such point was decided in the former action. The judgment decided the existence and liability merely of the demand. The parties must be adversary. Bigelow, Estop. 96, and cases cited. Thus, though executors represent all parties in interest in a will in proceedings for the probate thereof, still, if two or more of the legatees or devisees have adverse claims under the will, no decision on the question of probate will bind such claimants *inter sese.* In order that the former judgment shall constitute an estoppel, "it must appear by the record of the prior suit that the particular controversy sought to be concluded was necessarily tried and determined; that is, if the record of the former trial shows that the verdict could not have been rendered without deciding the particular matter, it will be considerd as having settled that matter as to all

future actions between the parties. * * * But, even where it appears from the extrinsic evidence that the matter was properly within the issue controverted in the former suit, if it be not shown that the verdict and judgment necessarily involved its consideration and determination, it will not be concluded." Id. 82, note.    To sustain the plea of a former judgment in bar, it must appear that the cause of action in both suits was the same, or that some fact essential to the maintenance of the first suit was in issue in the first action. *Perry* v. *Dickerson*, 85 N. Y. 345.    In that case plaintiff brought an action to recover damages for wrongful dismissal, in which he was unsuccessful. In a subsequent case, brought for wages due at the time of dismissal, the doctrine of *res adjudicata* was invoked by the defendant, and the court held that the claim for wages earned and the claim for wrongful dismissal constituted two separate and distinct causes of action, and that a suit and judgment upon one of them was not a bar to an action on the other, notwithstanding that the causes of action arose out of the same general contract and circumstances.    It will be seen in the opinion of Surrogate ROLLINS, in granting the application in the first proceeding, that his conclusion was based partly upon the fact that the guardian was then providing for the child's support, and the mother was not.

There is nothing inconsistent in the position of the guardian at the time of making the petition and now.    At that time he might very well have borrowed money which he applied for the education and support of the infant, relying upon an improvement in his financial condition to repay the same without having recourse to the property of the infant; but finding himself unable to do this, is compelled, eventually, to resort to that fund.    It may very well have been that expenses were incurred by the guardian which, while not warranted by the actual income of the infant at the time, were justified by what at that time the prospective income of the infant might appear to be. That the guardian had reason to expect that the income of the infant's estate would be larger than that actually realized is apparent.    In fact, the counsel for the special guardian (really representing the trustee herein) remarks in his brief that the guardian had every reason to believe that the value of the infant's legacy was much larger than what it actually proved to be.    I am of opinion that the issue in the present case was not litigated and determined in the former proceeding, nor is the determination of the question here presented necessarily implied from the former judgment.    The finding of the referee in this regard must be overruled.    As to the unpaid school bill, the finding of the referee is correct.    It is simply a liability of the ward, which may be discharged by the successor of the present guardian.    There is no necessity or propriety in making an allowance to the resigning guardian for that purpose, now that his duties are to cease.